IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY WILLIAMS | : | CIVIL ACTION |
| v. | : | No. 14-2140 |
| MS. WALTERS, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                   **July 17, 2014**

     Plaintiff Larry Williams, acting pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while a prisoner at the Pennsylvania State Correctional Institution at Graterford (SCIG) by Defendants SCIG Security Captain Jerome Strickland, Corrections Officer (CO) Pamela Walters, the SCIG Mailroom, and Unknown Defendant. Defendants CO Walters, Captain Strickland, and the SCIG Mailroom have filed a motion to dismiss for failure to state a claim, and for the reasons set forth below, this motion will be granted.[1] When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Williams's claims against the individual

---

[1] Williams filed his original Complaint against four Defendants—CO Walters, Captain Strickland, Unknown Defendant, and the SCIG Mailroom. By Order of April 16, 2014, this Court dismissed without prejudice to reassertion Williams's claims against Unknown Defendant and the SCIG Mailroom, and permitted Williams to amend his Complaint and identify with adequate specificity such defendants and the manner in which each defendant violated his constitutional rights. As of this date, Williams has not amended his Complaint. Even though the SCIG Mailroom was dismissed as a party, it joined Defendants CO Walters and Captain Strickland's motion to dismiss, so the Court will address the claims asserted against it. On July 8, 2014, after the Defendants filed their motion to dismiss, Williams filed a motion for leave to file an amended complaint so he could clarify how CO Walters, Captain Strickland, and Unknown Defendant took part in violating his constitutional rights. The Court will grant this motion to amend.

Defendants in their official capacities and against the SCIG Mailroom will be dismissed with prejudice and he may not reassert them. His remaining claims will be dismissed without prejudice to Williams's right to file an amended complaint which cures the deficiencies identified herein.

**BACKGROUND[2]**

On January 12, 2014, Williams was a prisoner at SCIG, and he was placed in administrative custody pending disciplinary action, based on a misconduct report filed by CO Walters. Williams attended a misconduct hearing two weeks later, and he was found guilty of refusing to obey an order; the remaining charges, including threatening a CO, were dismissed. He was sanctioned to thirty days of disciplinary confinement. Williams claims he was scheduled to be released back into general population on February 12, 2014, but two days before the release date, CO Walters, Captain Strickland, and Unknown Defendant (a corrections officer), filed a report stating that Williams was a danger to people in the institution and he should be placed in administrative custody. Williams was then transferred to SCI Frackville.

Williams asserts the Defendants conspired to file the second report against him to keep him in confinement and their actions amount to retaliation. He asserts a violation of his Fourteenth Amendment equal protection rights because other inmates did not receive the same punishment he received (disciplinary and administrative confinement) for the same behavior.

Williams also claims the SCIG Mailroom withheld one of three books he initially ordered to be sent to SCIG but then requested they be forwarded to his current prison, SCI Frackville. He argues he never received the book, and it has been intentionally withheld or stolen in retaliation.[3]

---

[2] The following facts are drawn from the allegations of Williams's Complaint, which this Court must accept as true in evaluating the instant motion to dismiss. *See Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009).

2

Williams seeks monetary damages for all of his claims.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In order for a claim to proceed, "the facts alleged in the complaint [must be] sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal,* 556 U.S. at 679). Where, as here, the plaintiff is proceeding pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir. 2009).

To the extent Williams seeks to assert claims against CO Walters and Captain Strickland in their official capacities and against the SCIG Mailroom, those claims fail pursuant to the Eleventh Amendment's grant of immunity. Absent consent by the state or valid congressional override, the Eleventh Amendment bars suits in federal court by private parties for money damages against the state.[4] *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997);

---

[3] Williams also alleges the Commissary Department at SCIG withheld an order he placed. However, the Commissary Department is not a named defendant in this case. As such, the Court will not address this claim.

[4] The Department of Corrections is an executive department of the Pennsylvania state government. *See* 71 Pa. Cons. Stat. § 61. The SCIG Mailroom is part of the institution under control of the DOC, and therefore a claim against it is considered to be a claim against the state. *See Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) ("Because the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). State officials sued in their official capacities are also immunized from federal suit. *See Graham*, 473 U.S. at 166-69 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)); *see also Coeur d'Alene Tribe*, 521 U.S. at 269. Specific to this case, § 1983 does not abrogate the states' Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 341-42 (1979); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989) (explaining that although the Supreme Court in *Monell v. Department of Social Services* recognized municipal liability, its holding applied only to local government units which are not part of the state because "[s]tates are protected by the Eleventh Amendment while municipalities are not").

A state may consent to be sued in federal court, *see Seminole Tribe*, 517 U.S. at 54-55, but Pennsylvania has expressly withheld consent, *see* 1 Pa. Cons. Stat. § 2310 ("[I]t is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."); *see also* 42 Pa. Cons. Stat. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). Therefore, any claims against the individual Defendants in their official capacities or against the SCIG Mailroom will be dismissed with prejudice.

---

Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity." (internal citation omitted)).

Williams's retaliation claims against CO Walters and Captain Strickland in their individual capacities will also be dismissed because he has not pleaded facts sufficient to establish the essential elements of this claim.

To state a claim for retaliation, a prisoner must show "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citation and internal quotation marks omitted).

Williams claims the individual Defendants conspired to file a report against him two days before his release from disciplinary confinement, and their actions were in retaliation for the dismissal of the charges against him concerning making threats to CO Walters.

Williams, however, points to no constitutionally protected conduct in which he engaged. His refusal to obey an order, his participation in disciplinary proceedings, and the dismissal of certain charges against him are not constitutionally protected conduct. In addition, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct.'" *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). The filing of a disciplinary report by a prison official is not retaliation "unless the report is, in fact, false," and "the finding of guilt of the underlying misconduct charge satisfies a defendant's burden of showing that he would have brought the misconduct charge [absent the protected conduct]." *Walker v. Campbell*, No. 09-282, 2011 WL 6153104, at *7 (W.D. Pa. Oct. 31, 2011) (citations omitted), *report and recommendation adopted*, No. 09-282, 2011 WL 6176808 (W.D. Pa. Dec. 9, 2011). After a hearing on the original misconduct report filed by CO Walters, Williams was found guilty of refusing to obey an order. His placement in disciplinary and then administrative custody stemmed from his adjudication of

guilt. Williams also fails to meet the third element of a retaliation claim because he does not assert any facts that causally connect the allegedly adverse action to any protected conduct. Because Williams has failed to plead facts sufficient to render plausible his claims of retaliation against the individual Defendants, this claim will be dismissed without prejudice.[5]

Williams also fails to adequately allege facts to advance his equal protection claim. He asserts his equal protection rights were violated because "Internal Security discriminate[s] against inmates who actually don't threaten[] Institutional Security." Compl. ¶ 14. In his response to the Defendants' motion to dismiss, he elaborates that other prisoners accused of the same misconduct (disobeying an order from a female corrections officer) did not receive the same sanctions he received, namely a transfer to a different prison. *See* Pl.'s Mem. of Law in Opp'n of Commonwealth Defs.' Mot. To Dismiss 3 [hereinafter Pl.'s Resp.].

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying to any person the equal protection of the laws, "which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, the plaintiff must show: "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Homan v. City of Reading*, 963 F.

---

[5] Williams also asserts a retaliation claim against the SCIG Mailroom because he did receive a book he ordered. Williams does not name any individual SCIG Mailroom workers, and so this is a claim against the state and, as explained above, barred by the Eleventh Amendment. However, even if the SCIG Mailroom was not immune and even if failure to deliver a book was adverse action, Williams has not pleaded any constitutionally protected conduct that led to this action, and he does not causally connect the events. As a result, this claim for retaliation is dismissed with prejudice.

Supp. 485, 490 (E.D. Pa. 1997) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

Williams fails to allege he was treated differently than other similarly situated inmates or that there was no rational basis for any difference in treatment. He does not identify any inmates who were treated more favorably, and he asserts only that "others" were placed back in the general population after being found guilty of disobeying an order, whereas he was "kicked out [of] the prison." Pl.'s Resp. 3. He does not state that any selective treatment he received was either based on an impermissible consideration, or given for the purpose of punishing his exercise of his constitutional rights or with an intent to injure him. As such, his claim under the Equal Protection Clause will be denied without prejudice to reassertion.

Williams's conspiracy claim fails because he has not sufficiently alleged either the existence of a conspiracy or a violation of his civil rights. To establish a civil conspiracy claim under § 1983, a plaintiff must demonstrate: "(1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Marchese v. Umstead*, 110 F. Supp. 2d 361, 371 (E.D. Pa. 2000); *see Holt Cargo Sys., Inc. v. Del. River Port Auth.*, 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998) ("[A] conspiracy claim is not actionable without an actual violation of section 1983." (quoting *Hale v. Townley,* 45 F.3d 914, 920 (5th Cir.1995))), *aff'd*, 165 F.3d 242 (3d Cir. 1999). As to the existence of a conspiracy, the plaintiff must specifically allege the "combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events." *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999) (citation omitted), *aff'd*, 210 F.3d 358 (3d Cir. 2000). Only those "allegations of conspiracy which are particularized, such as those addressing the period of the conspiracy, the object of the

conspiracy, and certain other actions of the alleged conspirators taken to achieve that purpose will be deemed sufficient." *Id.*

Williams's conspiracy claims fails because, as explained above, he has failed to adequately plead a deprivation of any civil rights. Additionally, he has not alleged any facts regarding the existence of a conspiracy; his claim is based on conclusory allegations the three individual Defendants were acting in concert rather than any facts the Defendants had some agreement or meeting of the minds. He also fails to connect any of the Defendants' actions. Therefore, this claim will be dismissed without prejudice to reassertion.[6]

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[6] Williams also fails to sufficiently allege a conspiracy claim pursuant to 28 U.S.C. § 1985. To plead such a claim, the plaintiff must demonstrate: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983). This statute provides a cause of action only when there is "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Williams has failed to allege any of his equal protection rights, privileges, or immunities have been violated or that the alleged conspirators acted with any discriminatory animus. In addition, as explained above, he has failed to allege any facts suggesting a meeting of the minds, agreement, or mutual understanding; rather he just conclusory asserts the individual Defendants were acting in concert to retaliate against him.